Michael ROBUCK, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00239–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 14, 2001.

Roy R. Barrera, Sr., Sharon S. Brown, Nicholas & Barrera, P.C., San Antonio, TX, for Appellant.

Daniel Thornberry, Assistant Criminal District Attorney, San Antonio, TX, Matthew W. Paul, State's Prosecuting Attorney, Jeffery L. Van Horn, First Assistant State's Attorney, Austin, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, and PRESTON H. DIAL, Justice.[1]

PRESTON H. DIAL, Justice (Assigned).

This case is on remand from the Texas Court of Criminal Appeals. Michael Robuck ("Robuck") appeals the trial court's order, deferring his adjudication for misdemeanor possession of marijuana and placing him on community supervision. Robuck raises five points of error directed at the trial court's ruling on his pre-trial motion to suppress. Robuck sought to suppress the marijuana seized from a drawer in the bedroom of his home.[2] We reverse the trial court's judgment and render judgment acquitting Robuck of the charges pending against him.

### PROCEDURAL HISTORY OF APPEAL

On original submission, this court reversed the trial court's judgment based on the application of the *Helms*[3] rule and its corollary. *Robuck v. State*, 974 S.W.2d 287 (Tex.App.—San Antonio 1998), *vacated*, 21 S.W.3d 300 (Tex.Crim.App.2000). We held, "Because Robuck entered his plea based on his understanding that he could appeal the trial court's ruling on his motion to suppress, a misunderstanding shared by his attorney and the trial court, his plea was not entered voluntarily." *Id.* at 289. Accordingly, we reversed the trial court's judgment and remanded the cause to permit Robuck to replead. *See id.*

On June 28, 2000, the Texas Court of Criminal Appeals vacated our judgment and remanded the cause for reconsideration in light of the Court's opinion in *Young v. State*, 8 S.W.3d 656 (Tex.Crim. App.2000), noting that the Court had reexamined the *Helms* rule in *Young*. The

---

1. Assigned to this case by the Chief Justice of the Texas Supreme Court.

2. When the officers were executing the search warrant, Robuck directed them to the drawer containing the marijuana.

3. *Helms v. State*, 484 S.W.2d 925 (Tex.Crim. App.1972).

parties were given an opportunity rebrief. Both parties elected to proceed based on the briefs originally filed.

### APPLICATION OF YOUNG V. STATE

In *Young v. State*, the Court of Criminal appeals reconsidered the *"Helms* Rule" which provided that, "Where a plea of guilty is voluntarily and understandingly made, all non-jurisdictional defects including claimed deprivation of federal due process are waived." 8 S.W.3d at 656 (quoting *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972)). After discussing the historical development of the *Helms* rule, the Court asserted:

> The *Helms* Rule, therefore imposes on a guilty plea the procedural consequence that was established in a line of federal cases from which it is descended—a knowing and voluntary plea of guilty waives claims of errors that preceded the plea. But it omits the rationale of the federal decisions, which is that a valid plea of guilty has this consequence because it is independent of such errors, and is sufficient to support the judgment of conviction. When the *Helms* Rule is applied to foreclose appellate review of a judgment that was not independent of an antecedent error, or a judgment that was based in part on inadmissible evidence to which proper objection was made, the consequence is not justified by the rationale of the rule. To be justified by its premises and consistent with its precedents, a rule of waiver would be imposed on pleas of guilty (or nolo contendere) only to the extent that the resulting judgment of conviction was independent of the error being raised on appeal.

*Young*, 8 S.W.3d at 661–62 (citations omitted). The Court concluded that the *Helms* Rule would no longer be enforced in the terms in which it was stated in 1972, stating:

> Whether entered with or without an agreed recommendation of punishment by the State, a valid plea of guilty or nolo contendere "waives" or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error.

*Id.* at 666–667. In the instant case, Robuck's judgment of guilt "is not independent of the trial court's ruling on his motion to suppress the evidence of the offense, and the judgment would not be supported without that evidence." *Id.* Therefore, we have jurisdiction to address the merits of Robuck's challenge to the trial court's ruling on the motion to suppress.

### MOTION TO SUPPRESS

In his motion to suppress, Robuck contended that his property was searched without a valid warrant. Robuck claimed, "Any warrant allegedly secured was done so without a substantial factual basis alleged in a supporting affidavit upon which a neutral and detached magistrate could make an impartial decision that probable cause did exist for the issuance of said warrant." The motion further provided that the evidence should be suppressed for the following reasons:

(A) Any arrest and/or detention of Defendant was without probable cause and any search resulting therefrom is therefore per se illegal.

(B) Any search conducted of Defendant's property or person was without a valid warrant and is therefore per se illegal, there being no exception to the necessity for obtaining a valid warrant.

(C) Any search conducted of Defendant's property, person, or vehicle

was made without probable cause is therefore per se illegal.

(D) Any search conducted of Defendant's property, person, or vehicle was made without his consent. Any consent which is or may be alleged to have been given was not freely and voluntarily given, the same having been given under duress and coercion, or induced by fraud, from State agents, and is therefore per se illegal.

(E) Any search warrant that was procured was done so without a valid affidavit in support thereof and is therefore invalid.

At the hearing on the motion, Robuck's attorney summarized the issue presented to the trial court as an objection to the probable cause for the issuance of the warrant to search the residence. At the conclusion of the hearing, the trial court denied the motion. The trial court entered findings of fact and conclusions of law, stating, "That said search warrant was secured upon facts alleged in a supporting affidavit. That said supporting affidavit was presented to a neutral and detached magistrate who made an impartial decision that probable cause did exist for the issuance of said warrant."

■ The State initially contends that Robuck failed to preserve the complaints made in his third, fourth, and fifth points of error. We agree that Robuck failed to preserve his third and fifth points of error. At the commencement of the hearing, Robuck's attorney advised the court that the objection being raised in the motion was to the probable cause for the issuance of the warrant to search the residence. Robuck never asserted that the affidavit contained perjured statements or that the warrant to search the residence was an anticipatory search. Because Robuck failed to assert these complaints at the suppression hearing for the trial court's consideration, the complaints are not preserved for this court's review. See, e.g., Davis v. State, 22 S.W.3d 8, 11 (Tex.App.—Houston [14th Dist.] 2000, no pet.); Taylor v. State, 20 S.W.3d 51, 56 (Tex.App.—Texarkana 2000, pet. ref'd); State v. Fecci, 9 S.W.3d 212, 222 (Tex.App.—San Antonio 1999, no pet.); see also Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (evidentiary hearing on veracity of affidavit only required if "allegations of deliberate falsehood or of reckless disregard for the truth" are accompanied by an offer of proof pointing out "specifically the portion of the warrant affidavit that is claimed to be false"). The information obtained in executing the federal express box search warrant was relied upon to obtain the search warrant for Robuck's residence. The questioning during the suppression hearing was clearly focused on the validity of both warrants. Therefore, we conclude that Robuck preserved his fourth point of error to the extent that it relates to the validity of the search warrant for the federal express box.

### STANDARD OF REVIEW

■ A search warrant must be supported by an affidavit setting forth substantial facts establishing probable cause for its issuance. See Davis v. State, 27 S.W.3d 664, 667 (Tex.App.—Waco 2000, pet. filed); Mayfield v. State, 800 S.W.2d 932, 934 (Tex.App.—San Antonio 1990, no pet.). "Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued." Davis, 27 S.W.3d at 667; see also Mayfield, 800 S.W.2d at 934. The four corners of the affidavit are examined in determining whether probable cause exists. See Davis,

27 S.W.3d at 667; *Mayfield*, 800 S.W.2d at 934. "Reasonable inferences may be drawn from the affidavit, however, and the affidavit must be interpreted in a common sense and realistic manner" *Davis*, 27 S.W.3d at 667; *see also Mayfield*, 800 S.W.2d at 935. "The magistrate is not required to find proof beyond a reasonable doubt or by a preponderance of the evidence, but only a probability that contraband or evidence of the crime will be found in a particular place." *Davis*, 27 S.W.3d at 667; *see also Mayfield*, 800 S.W.2d at 934.

We review a trial court's ruling on a motion to suppress using the "bifurcated" standard of review set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim. App.1997). *See Burke v. State*, 27 S.W.3d 651, 654 (Tex.App.—Waco 2000, pet. ref'd); *Lane v. State*, 971 S.W.2d 748, 752 (Tex. App.—Dallas 1998, pet. ref'd). "Thus, we give deference to the trial court's determination of historical facts that depend on credibility choices, but review its application of the law of probable cause *de novo*." *Burke*, 27 S.W.3d at 654. Because only the four corners of the affidavit are examined in determining whether probable cause to issue a warrant exists, the trial court is not required to make any credibility choices in examining the affidavit. *Burke*, 27 S.W.3d at 654; *Lane*, 971 S.W.2d at 752. Therefore, we review the trial court's ruling *de novo*. *Burke*, 27 S.W.3d at 654; *Lane*, 971 S.W.2d at 752. In conducting this *de novo* review of the trial court's ruling, we do not determine the substantive issue that was before the magistrate *de novo*. *Lane*, 971 S.W.2d at 752. "Instead, giving great deference to the magistrate's decision to issue the warrant, we determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed." *Id.; see also Mayfield*, 800 S.W.2d at 934.

## DISCUSSION

Officer Roger D. Hermes, an employee of the Texas Department of Public Safety Narcotics Service, and William Hale, a special agent with the United States Drug Enforcement Administration, were co-affiants in the affidavits supporting the search warrants that Robuck challenged in his motion to suppress.

On June 9, 1995, Hermes and Hale were conducting a routine investigation of individuals who utilize commercial transportation companies to ship contraband. Hale was at a federal express facility when he observed a taped brown cardboard box addressed to Michael Robuck at his home from M.J. Antique Lamp in Columbus, Ohio. Through previous narcotics investigations, both Hermes and Hale knew Robuck to be a trafficker of contraband. The box and shipping label were consistent with labels on boxes which contained contraband that Hermes and Hale had observed and seized in the past. Hermes and Hale contacted San Antonio Police Officer Rick Villarreal, who is a certified narcotics detector dog handler. Villarreal met with Hermes and Hale, accompanied by "Jessie," a narcotics detector dog. "Jessie" made a positive alert on the described box as to the presence of the odor of contraband. Hale contacted Officers of the Columbus, Ohio Police Department and was informed that the sender's address was fictitious. Hermes and Hale prepared an affidavit reciting the foregoing facts, and a search warrant was issued authorizing the search of the box.

After the first search warrant was executed, Hermes and Hale prepared an affidavit to support their request of a second search warrant. The second affidavit initially repeated the facts set forth in the first affidavit. The affidavit then continued with the execution of the first search

warrant. When the first search warrant was executed, Hermes and Hale discovered approximately $45,000 in United States Currency. While counting the currency, Hermes and Hale detected the strong odor of marijuana emitting from the currency. Hermes and Hale were then notified that an individual identifying himself as Robuck was continuing to contact federal express officials wanting information regarding the delivery of the box. The individual was displaying signs of great impatience. Hermes and Hale also noted that they "have also learned and know that due to the long term involvement of the suspected party [Robuck] in the drug trade that quantities of currency and other evidence documents are constantly maintained by the suspected party [Robuck] at the suspected place" that Hermes and Hale were requesting to search—Robuck's home.

The affidavit provided a substantial basis for the magistrate's conclusion that a probability existed that contraband or evidence of a crime would be found in the federal express box. *Davis*, 27 S.W.3d at 667; *see also Mayfield*, 800 S.W.2d at 934. The magistrate's issuance of the first search warrant was supported by: (1) the officers' knowledge that Robuck was a known drug trafficker receiving a box that was consistent with labels on boxes which contained contraband observed and seized by the officers in the past; (2) the positive alert the narcotics detection dog made on the box; and (3) evidence that the sender's address on the shipping label was fictitious. However, the affidavit did not provide a substantial basis for the issuance of the second search warrant. No facts were contained in the affidavit that would support a conclusion that contraband or evidence of a crime would be found at Robuck's residence. The only statement contained in the affidavit that relates to Robuck's residence is the generalized assertion that quantities of currency and other evidence documents would be constantly maintained at Robuck's residence given his long term involvement in the drug trade. This statement is too general to support the issuance of a search warrant for Robuck's residence. Therefore, the trial court abused its discretion in denying the motion to suppress.

### CONCLUSION

The trial court's judgment is reversed, and judgment is rendered acquitting Robuck of the charges against him.

*Dissenting opinion by SARAH B. DUNCAN, Justice*

Like the majority, I do not believe that probable cause is established by a general statement that a "known drug trafficker" "constantly maintain[s]" at his residence "quantities of currency and other evidence documents." However, probable cause for the issuance of a warrant to search Robuck's residence was established by the officers' statements that they had seized a box addressed to Robuck, the box contained $45,000 that smelled strongly of marijuana, and Robuck had been calling regarding the delivery of the box. I therefore respectfully dissent.