**Allen John MURRAY, Appellant**

v.

**The STATE of Texas, Appellee**

**No. 04-16-00227-CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: June 21, 2017

APPELLANT ATTORNEY: James C. Oltersdorf, Attorney at Law, 12407 Los Campos, San Antonio, TX 78233.

APPELLEE ATTORNEY: Laura E. Durbin, Assistant Criminal District Attorney, 101 W. Nueva, Suite 370, San Antonio, TX 78205.

Sitting: Karen Angelini, Justice, Luz Elena D. Chapa, Justice, Irene Rios, Justice

## OPINION

Irene Rios, Justice

### INTRODUCTION

Allen John Murray was convicted by a jury of compelling prostitution. To support this conviction, the State introduced into evidence pictures, private messages, and other electronic data from a Facebook account assigned to Murray. On appeal, Murray contends: (1) the affidavit supporting the search warrant did not establish probable cause to search Murray's Facebook account because it did not demonstrate the reliability of the informant or source of information; and (2) the evidence the trial court admitted from the Facebook account was not properly authenticated. We affirm the trial court's judgment of conviction.

### FACTS

This case arose based upon an outcry statement made by C.J., a 13-year-old girl, in which C.J. alleged she met Allen John Murray after she ran away from home. C.J. claimed Murray took pictures of her and posted them on his Facebook page to advertise her for sex. C.J. stated that at least three men came to Murray's house, gave money to Murray and engaged in sexual intercourse with her. After two days, C.J. left Murray's house and returned to her grandmother's home; however, she then stole her grandmother's car and ran away again. C.J. was eventually arrested and taken to the Bexar County Juvenile Detention Center where she made the outcry statement to a juvenile detention officer. A state trooper from the Department of Public Safety (DPS), conducted an investigation and prepared an investigative report of his findings. The report stated the officer's observation of a Facebook page assigned to Murray, as it appeared to the general public, confirmed the presence of sexually provocative pictures of C.J., and these pictures were attached to the report.

Subsequently, Jonathan Brown, a Texas Peace Officer assigned as an investigator with the Bexar County District Attorney's Office, executed an affidavit to obtain a search warrant of Murray's Facebook account, profile, and private messages based upon the information provided by C.J. to law enforcement and the DPS officer's investigative report. The magistrate issued a search warrant.

As a result of this investigation, the State charged Murray in a four-count in-

dictment with trafficking of a child and compelling prostitution. During trial, the prosecution introduced evidence of the pictures of C.J. that appeared on the Facebook page assigned to Murray, as well as private messages received and written pertaining to C.J. through the Facebook account. A jury acquitted Murray of three counts and returned a guilty verdict on one count of compelling prostitution. Murray now appeals.

## ANALYSIS

### Issue One: Probable Cause for a Search Warrant

In his first issue, Murray argues the trial court abused its discretion by denying his motion to suppress evidence obtained as a result of the search warrant. Murray contends the affidavit supporting the search warrant did not contain sufficient facts to establish probable cause to search Murray's Facebook account. Specifically, Murray asserts Officer Brown attested to information provided by C.J. through other law enforcement officers, but failed to verify the information or otherwise establish C.J.'s reliability. Therefore, the affidavit is based solely upon hearsay and cannot establish probable cause to issue a search warrant of Murray's Facebook account.

■ A search warrant must be supported by an affidavit which sets forth substantial facts establishing probable cause for its issuance. *See Davis v. State*, 27 S.W.3d 664, 667 (Tex. App.—Waco 2000, pet. ref'd); *Mayfield v. State*, 800 S.W.2d 932, 934 (Tex. App.—San Antonio 1990, no pet.). Probable cause to support the issuance of a search warrant exists when the totality of the circumstances presented to the magistrate in the affidavit are sufficient to justify a conclusion that evidence of the specified crime, or the object of the search, is probably in a particular place. *Davis*, 27 S.W.3d at 667; *Gonzales v. State*, 481 S.W.3d 300, 306 (Tex. App.—San Antonio 2015, no pet.). To satisfy this standard, there must exist at least a fair probability or substantial chance that evidence of a specific crime will be found in the place, person or thing to be searched. *Rodriguez v. State*, 232 S.W.3d 55, 60-61 (Tex. Crim. App. 2007); *Gonzales*, 481 S.W.3d at 306. While only the four corners of the affidavit may be examined to determine whether probable cause exists, reasonable inferences may be drawn from the affidavit, and it must be interpreted in a common-sense and realistic manner. *Gonzales*, 481 S.W.3d at 306.

■ The reliability of the affiant and his sources of information are part of the totality of the circumstances that the magistrate should evaluate in making a probable-cause determination. *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), *cert. denied* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078, *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991). However, "where a crime victim, who is a private citizen, reports the commission of a criminal offense, and whose only contact with law enforcement authorities is a result of having been victimized at the hands of another, the credibility and reliability of the information is inherent." *Nelson v. State*, 855 S.W.2d 26, 30 (Tex. App.—El Paso 1993, no pet.). Therefore, in making a probable-cause determination, a magistrate is entitled to rely on source information supplied by a victim eyewitness without an independent showing of reliability. *Id.*; *see also Gonzales*, 481 S.W.3d at 308. Similarly, "[t]he magistrate may rely on the affidavit of a police officer based on . . . the knowledge of other officers." *Johnson*, 803 S.W.2d at 289.

### *Standard of Review*

■ An appellate court must review a trial court's ruling on a motion to suppress

using the "bifurcated" standard of review set forth in *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997). *Robuck v. State*, 40 S.W.3d 650, 654 (Tex. App.—San Antonio 2001, pet. ref'd); *see also Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.—Waco 2000, pet. ref'd). Thereby, the appellate court will "give deference to the trial court's determination of historical facts that depend on credibility choices, but review its application of the law of probable cause de novo." *Burke*, 27 S.W.3d at 654. Because it examines only the four corners of the affidavit to determine whether probable cause to issue a warrant exists, the trial court is not required to make any credibility choices in examining the affidavit. *Robuck*, 40 S.W.3d at 654; *Burke*, 27 S.W.3d at 654. Therefore, the appellate court will review the trial court's ruling *de novo* and must give great deference to the magistrate's decision to issue the warrant to determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *Robuck*, 40 S.W.3d at 654; *Burke*, 27 S.W.3d at 654.

## Application

In his affidavit, Officer Brown named C.J. as a source of information and attested he obtained information "through personal investigation or discussions with other law enforcement personnel." Based upon this information provided, Officer Brown attested Murray took photos of C.J. and uploaded those photos to Facebook. A short time later, individuals contacted Murray through Facebook private messages. When these individuals arrived and paid Murray, he instructed C.J. to engage in sexual intercourse with them.

Because C.J. was the victim of the alleged crime, Officer Brown did not need to independently verify the information provided or establish C.J.'s reliability. As the victim, C.J.'s credibility and the reliability of the information she provided are inherent. *See Nelson*, 855 S.W.2d at 30. Similarly, the magistrate could have relied on information provided to Officer Brown by other law enforcement officers. *See Johnson*, 803 S.W.2d at 289. Therefore, the failure of Officer Brown to establish C.J.'s credibility or to verify information provided by other officers are not valid bases to suppress the Facebook-account evidence obtained through the search warrant.

To the extent Murray contends Officer Brown did not convey sufficient facts to establish probable cause to issue a search warrant, this argument fails as well. From the information C.J. provided, the magistrate could reasonably infer that Murray uploaded the pictures to his Facebook account for the purpose of prostituting C.J., and evidence of the crime could be found in Murray's Facebook account. Thus, considering C.J.'s description of Murray's actions, the magistrate had a substantial basis to conclude probable cause existed to issue the search warrant of Murray's Facebook account.

Therefore, the trial court did not err by denying Murray's motion to suppress the Facebook evidence obtained as a result of the search warrant. We overrule Murray's first issue on appeal.

## Issue Two: Authentication of Facebook Evidence

In his second issue on appeal, Murray contends the trial court erred by admitting evidence of the electronic contents of a Facebook page, particularly the private messages and account subscriber information. Murray alleges the State did not properly authenticate the Facebook evidence pursuant to Texas Rule of Evidence 901 because it failed to prove he created

and maintained the content of the Facebook page.

Authentication of evidence is a condition precedent to its admissibility. TEX. R. EVID. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). To cross the threshold of authentication, the proponent must produce evidence "sufficient to support a finding that the item is what the proponent claims it is." *See* TEX. R. EVID. 901(a); *Reed v. State*, 811 S.W.2d 582, 586 (Tex. Crim. App. 1991); *Tienda*, 358 S.W.3d at 638. Rule of Evidence 901(b) provides an illustrative, though not exhaustive, list of examples of extrinsic evidence that satisfies the requirement of authentication. TEX. R. EVID. 901(b)(1)-(10); *Reed*, 811 S.W.2d at 586. Rule 902 identifies certain evidence as self-authenticating and dismisses Rule 901's requirement of extrinsic evidence of authenticity. TEX. R. EVID. 902(1)-(10). Rule 902(10) allows for business records to be self-authenticated by an affidavit, rather than by testimony at trial, and enumerates language for such affidavit. TEX. R. EVID. 902(10). An unsworn declaration made under penalty of perjury may be used in place of an affidavit. TEX. R. EVID. 902(10)(B).

■■■ Once the threshold of admissibility is satisfied, the ultimate question whether an evidentiary item is what its proponent claims it to be, then it becomes an issue for the fact-finder to determine. *Tienda*, 358 S.W.3d at 638. When presented with the issue of admissibility of evidence, in performing its gate-keeping function, the trial court itself need not be persuaded that the proffered evidence is authentic. *Id.* Rather, the preliminary question for the trial court to decide is whether the proponent of the evidence presents sufficient facts to support a reasonable jury determination that the evidence proffered is authentic. *Id.*

### Standard of Review

■■■ We review the trial court's admission of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1991) (op. on reh'g); *Jones v. State*, 111 S.W.3d 600, 606 (Tex. App.—Dallas 2003, pet. ref'd). A trial court does not abuse its discretion if its ruling was within the "zone of reasonable disagreement." *Tienda*, 358 S.W.3d at 638. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or if it acts without reference to any guiding rules or principles. *Montgomery*, 810 S.W.2d at 391. Therefore, if the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least "'within the zone of reasonable disagreement,'" a reviewing court should not interfere. *Tienda*, 358 S.W.3d at 638 (quoting *Montgomery*, 810 S.W.2d at 391).

### Application

Here, the State proffered evidence of Murray's Facebook account by way of a "Certificate of Authenticity of Domestic Records of Regularly Conducted Activity" executed by Facebook's Records Custodian. This Certificate of Authenticity sufficiently complied with the requirements of self-authentication outlined in Rule 902(10)(B), obviating the State's need to produce extrinsic evidence to authenticate the properly admitted Facebook evidence. Because the State satisfied the requirements of Rule 902(10), it presented sufficient facts to support a reasonable jury determination that the Facebook evidence proffered was authentic. *Tienda*, 358 S.W.3d at 638.

■■■ Murray contends the State failed to prove he created and maintained the contents of the Facebook pages and therefore did not properly authenticate the Facebook evidence as required by Rule 901.

The State is not required to conclusively establish that the defendant authored the messages; rather, the State must present prima facie evidence such that a reasonable jury could find the defendant created the content of the Facebook pages. *Id.* at 642; *Campbell v. State*, 382 S.W.3d 545, 552-53 (Tex.App.-Austin 2012). The courts are mindful of today's electronic world of cyber challenges where passwords can be compromised, computers can be hacked and cell phones can be stolen, raising questions about the origin or source of the information. *See Tienda*, 358 S.W.3d at 641. Because of the wide array of "electronically generated, transmitted and/or stored information, including information found on social networking web sites," the most appropriate method of authenticating electronic evidence to determine authorship will often depend upon the nature of the evidence and the circumstances of the particular case. *Id.* at 638-39.

In *Tienda*, the appellant complained the trial court erred in admitting into evidence the electronic content obtained from My-Space, a social networking website, because the State failed to prove he created and maintained the content of the My-Space pages. *See id.* at 637. The State's circumstantial evidence from the MySpace pages included photographs of the appellant with visibly unique arm, body, and neck tattoos wearing distinctive eyeglasses and an earring, reference to the deceased and music from his funeral, references to appellant's gang and messages referring to a shooting, a snitch, and the user having been on an ankle monitor for one year along with a photograph of appellant displaying an ankle monitor sent from the MySpace pages of "ron Mr. T" or "MR. SMILEY FACE" with an email address of "ronnietiendajr@". The Court of Criminal Appeals held the State produced ample circumstantial evidence, when "taken as a whole with all of the individual, particular details considered in combination" to support a finding that the MySpace pages not only belonged to appellant but were also created and maintained by him. *Tienda*, 358 S.W.3d at 645.

In this case, the State introduced sufficient circumstantial evidence of photographs, comments, and private messages from the Facebook account to establish a prima facie case such that a reasonable jury could find Murray created and maintained the contents of the Facebook account. Consistent with C.J.'s testimony that Murray took photos of her and posted them on Facebook, photos of C.J. were posted on the Facebook account bearing the name "Allen Murray". C.J. identified Murray as the other person in one picture with her. The post relating to that photograph of C.J. reads "For sale hmu" and shows "August 24" as the date of the post. In addition, the following private exchange of messages between the account user and another person, A.G., appeared on Murray's Facebook account in the late hours of August 24, 2013, and the early hours of August 25, 2013:

[Murray]: Hmu girl for sale

A.G.: What?

. . . .

[Murray]: *I got a girl for sale u wanna sample*

. . . . .

A.G.: Send me a pic

[Murray]: I put two up

A.G.: Where

[Murray]: On my status

A.G.: I see

We conclude the State presented sufficient prima facie evidence to support a finding by a reasonable jury that the exhibits were what they purported to be, that is, Facebook pages created by Murray.

For these reasons, the trial court's admission of the Facebook evidence was within the "zone of reasonable disagreement", and the trial court did not abuse its discretion by admitting the Facebook evidence. We overrule Murray's second issue on appeal.

## Conclusion

For the reasons stated, we conclude the trial court did not abuse its discretion by denying Murray's motion to suppress the Facebook evidence or by admitting the Facebook evidence. We affirm the trial court's judgment of conviction.